**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JOSEPH K. DAVIS,<br><br>                                  Plaintiff,<br>  vs.<br><br>JO ANNE B. BARNHART,<br><br>                                  Defendant. | CASE NO. 05cv1803 BTM(BLM)<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Joseph K. Davis and Defendant Jo Anne B. Barnhart have filed cross-motions for summary judgment. For the reasons discussed below, Plaintiff's motion for summary judgment is **DENIED** and Defendant's motion for summary judgment is **GRANTED**.

**I. PROCEDURAL HISTORY**

On November 1, 2000, Plaintiff protectively applied for disability insurance benefits under Title II of the Social Security Act.[1] The application was denied initially and upon reconsideration. Thereafter, Plaintiff made a timely request for a hearing. A notice of hearing before Administrative Law Judge Wurzel ("ALJ") was sent through the mail. When

---

[1] Plaintiff claims that he made a telephone inquiry about filing an application in 1992 but did not pursue the claim because he was told that he would have to meet the requirements for Supplemental Security Income. Whether the Social Security Administration employee misinformed Plaintiff about his eligibility for disability benefits has no bearing on the issues before the Court.

Plaintiff did not appear at the hearing, the ALJ dismissed the request for hearing. Plaintiff appealed, arguing that he never received a copy of the hearing notice. Because there was no evidence that the notice was actually received and there was no indication that the hearing office attempted to contact Plaintiff, the Appeals Council reversed and remanded.

On August 16, 2002, Plaintiff appeared without counsel at a hearing before the ALJ. The ALJ continued the hearing so that Plaintiff could secure representation. Plaintiff hired an attorney, and the ALJ held the hearing on June 10, 2003.

In a decision dated April 30, 2004, the ALJ found that Plaintiff was not disabled because he was engaged in substantial gainful activity during the relevant period of time. (Tr. 19-35.) The ALJ's decision became the Commissioner's final decision on July 15, 2005, when the Appeals Council denied Plaintiff's request for review. Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. **SUMMARY OF EVIDENCE**

Plaintiff claims that due to social phobia, panic attacks, and mental illness, he became too sick to work on or about November 3, 1982. (Tr. 91.) Plaintiff's insured status under Title II expired on December 31, 1985. (Tr. 65.) Therefore, the relevant period of time is November 3, 1982 to December 31, 1985.

Plaintiff was born on December 2, 1945. (Tr. 36.) He graduated from college and law school. (Tr. 333.) After law school, Plaintiff worked as a Deputy City Attorney from October 1973 until March 1977. (Id.) He was a supervising attorney for the Legal Aid Society between March 1977 and March 1980. (Id.)

Plaintiff taught a business law class at San Diego Community College from September 1, 1976 to September 1, 1987. (Tr. 92.) Plaintiff was sworn into office as a Municipal Court Judge on April 1, 1980. (Tr. 407.) He remained employed as a judge with full salary until on or about September 1, 1987. (Tr. 426.)

Plaintiff had his first panic attack on March 26, 1981. (Tr. 410.) On that day, he began to feel panicky when advising defendants of their constitutional rights. (Tr. 224.) He

was unable to continue and asked another judge to take over. (Tr. 215, 224.) After this panic attack, Plaintiff became increasingly nervous about speaking in public. (Tr. 225.) He videotaped himself advising a defendant of constitutional rights and began using the video instead of personally advising defendants. (Tr. 418.) In November 1982, while in traffic court, he experienced a sense of panic that left him trembling, embarrassed, and unable to speak. (Tr. 225.) He took a leave of absence after this panic attack. (Tr. 226, 182.)

Upon returning to work, Plaintiff took valium, which was prescribed by his physician, and drank alcohol. (Tr. 438-40.) Plaintiff would take frequent recesses so he could "medicate" himself. (Tr. 438.) Plaintiff avoided speaking to juries by having the bailiff instruct them about their duties and by having the attorneys stipulate to written jury instructions only. (Tr. 415-19.) On one occasion, a defense attorney refused to stipulate and appealed on the issue of the lack of oral jury instructions. (Tr. 210-214.) The California Court of Appeals apparently held that Plaintiff erred in failing to give oral jury instructions and reversed. (Tr. 226.)

Plaintiff claims that during 1983, 1984, and 1985, he was constantly either absent or leaving early or coming late. (Tr. 424.) Judge Littlejohn, the presiding judge at the time, recalls that Plaintiff was out more than the average person his age. (Tr. 189.) However, Judge Littlejohn states that Plaintiff's absences were not abusive and did not exceed the number of sick/vacation days allotted to him. (Tr. 186-89.)

Judge Littlejohn refrained from assigning Plaintiff to "special calendars" such as trial setting because he did not think that Plaintiff could handle the stress of those calendars. (Tr. 180-82.) Plaintiff did not attend or participate in judge's meetings. (Tr. 185.) The other judges complained to Judge Littlejohn that Plaintiff was absent too much and did not carry his load. (Tr. 177.)

After the panic attacks, Plaintiff continued to teach at the San Diego Community
///
///
///

1  College.  He explains that although he was paid to teach a three hour class once a week he
2  would only hold class for one hour.  (Tr. 470.)  He did not lecture or call on students, but,
3  rather, had students answer workbook questions in the order that they were seated.  (Tr.
4  395.)  If a student had a question, Plaintiff would point at another student to answer the
5  question.  (Id.)  If a student tried to ask him a question, he would just stare at the class.  (Tr.
6  401.)  Plaintiff gave multiple choice tests that were photocopied from a test book.  (Tr. 399.)
7  The tests were scored by a machine.  (Tr. 400.)

8  Plaintiff eventually stopped working on September 1, 1987, because he began
9  panicking before getting into his car and did not want to drive inebriated.  (Tr. 426.)
10 Subsequently, Plaintiff filed for disability retirement, which the Commission on Judicial
11 Performance denied.  (Tr. 265.)  Plaintiff, represented by counsel, litigated the denial and
12 ultimately prevailed.  (Tr. 428.)

13 In his report of January 31, 2001, Dr. Thayer, Plaintiff's family physician, explains that
14 the effects of Plaintiff's medication "rendered him incapable of performing any work
15 successfully or to any substantial degree."  (Tr. 337.)  Dr. Thayer states: "The fact that, as
16 a Judge, he could manipulate the job setting does not signify that he could perform
17 substantial work in a job setting. . . .  His desire to hide his illness, avoid public ridicule and
18 continue attending the work setting does not contradict this diagnosis."  (Id.)

19 Dr. Rivkin saw Plaintiff three times in 1987.  (Tr. 225.)  He concluded that Plaintiff is
20 suffering from social phobia and that "the magnitude and chronicity of his condition render
21 him permanently disabled from performing his duties as a Judge in an effective manner."  (Tr.
22 228.)  Dr. Schucter saw Plaintiff two times after 1987.  He opined that "because of the years
23 of reinforcement . . . the prognosis is quite guarded."  (Tr. 330.)  Dr. Solomon evaluated
24 Plaintiff in 1989 and agreed with Dr. Rivkin's diagnosis and conclusions.  (Tr. 290.)

25
26 ### III. STANDARD OF REVIEW
27 The Commissioner's denial of benefits may be set aside if it is based on legal error
28 or is not supported by substantial evidence.  Jamerson v. Chater, 112 F.3d 1064, 1066 (9th

Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance. Id. Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

## IV.  DISCUSSION

Plaintiff contends that the ALJ erred in concluding that he engaged in substantial gainful activity during the period in question (November 3, 1982 to December 31, 1985). As discussed below, the Court finds that the ALJ's decision was supported by substantial evidence.

Under the Social Security Regulations, the determination of whether a claimant is disabled within the meaning of the Social Security Act is a five step process. The five steps are as follows: (1) Is the claimant presently working in any substantially gainful activity? If so, then the claimant is not disabled. If not, then the evaluation proceeds to step two. (2) Is the claimant's impairment severe? If not, then the claimant is not disabled. If so, then the evaluation proceeds to step three. (3) Does the impairment "meet or equal" one of a list of specific impairments set forth in Appendix 1 to Subpart P of Part 404? If so, then the claimant is disabled. If not, then the evaluation proceeds to step four. (4) Is the claimant able to do any work that she has done in the past? If so, then the claimant is not disabled. If not, then the evaluation proceeds to step five. (5) Is the claimant able to do any other work? If not, then the claimant is disabled. If, on the other hand, the Commissioner can establish that there are a significant number of jobs in the national economy that the claimant can do, the claimant is not disabled. 20 C.F.R. § 404.1520. See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

In a detailed and thorough decision, the ALJ concluded that Plaintiff was not disabled at the first step of the sequential evaluation. The ALJ found that Plaintiff's work as a municipal court judge and a teacher at San Diego Community College during the period in question was "competitive, non-sheltered work activity involving significant physical and

mental activity for pay or profit, without significant adjustments for impairment-related expenses." The ALJ rejected Plaintiff's characterization of his work as essentially useless.

The ALJ applied the proper law, and his decision is supported by substantial evidence. Based on the evidence in the record, a reasonable person could find that Plaintiff's work as a municipal court judge was substantial gainful activity.[2] Although Plaintiff was not given special assignments like other judges, avoided judge's meetings, avoided giving in-person constitutional rights advisements and oral jury instructions, and was absent more than the average judge his age, he still performed work requiring significant mental activity. He continued to hear cases and preside over jury trials. (Tr. 463.) He would hear as many as three cases in a day. (Id.) He ruled on every motion before him and ruled on evidentiary objections during the course of trials. (Id.)

Plaintiff clearly suffered from a severe mental impairment. However, the fact that Plaintiff had a severe medical condition does not in and of itself entitle Plaintiff to disability benefits. As explained by the ALJ, the sequential evaluation ends once a claimant is found to have engaged in substantial gainful activity, regardless of the claimant's medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(a), (b). In other words, once a claimant is found to have engaged in substantial gainful activity, the claimant is deemed not disabled, and the inquiry ends.

Plaintiff also argues that the ALJ was unfair and biased. ALJs are presumed to be unbiased, and this presumption can be rebutted only by a showing of conflict of interest or some other specific reason for disqualification. Rollins v. Massanari, 261 F.3d 853, 857-58 (9th Cir. 2001). Plaintiff has not presented any evidence that the ALJ had a conflict of interest or displayed a "clear inability to render fair judgment." Id. at 858 (quoting Liteky v. United States, 510 U.S. 540, 551 (1994)).

///

///

---

[2] The Court need not reach the issue of whether Plaintiff's work as a teacher qualifies as substantial gainful activity.

## IV.  CONCLUSION

For the reasons discussed above, Plaintiff's motion for summary judgment is **DENIED** and Defendant's cross-motion for summary judgment is **GRANTED**.  The Clerk shall enter final judgment affirming the ALJ's denial of disability insurance benefits.

**IT IS SO ORDERED.**

DATED:  January 3, 2007

_____
Hon. Barry Ted Moskowitz
United States District Judge